OPINION OF THE COURT
Charles J. Markey, J.
The defendant, by a misdemeanor complaint dated August 24, 2000, and a supporting deposition of the complaining witness, an undercover police officer, of the same date, is accused of the crime of prostitution under Penal Law § 230.00.
On January 30, 2001, the court held a Wade ¡Dunaway hearing. The sole witness at the hearing was Police Officer Tamara Golston of the 81st Precinct. The defense did not present any witnesses. The court finds the testimony of Officer Golston to *598 be credible. Based upon the evidence adduced at the hearing, the court makes the following findings of fact and conclusions of law.
Findings of Fact
On August 24, 2000, Officer Golston was working with the Queens Vice Unit (the Unit) within the confines of the 109th Police Precinct. The Unit was doing an undercover operation into prostitution.
The location of the premises under investigation was 140-40 34th Avenue, apartment No. 3 (the premises), in Queens County. Immediately prior to the operation, the Unit members met and agreed that if the undercover officer did not exit the premises within 10 minutes of entering it, the other members of the Unit would enter. At 7:20 p.m., the undercover police officer, shield number 31616, entered the location by himself. When the officer did not emerge from the premises at 7:30 p.m., six members of the Unit, including Officer Golston, entered the premises. They entered the premises by ringing the bell of apartment No. 3, and a male opened the door.
In the apartment, they found the defendant naked. The undercover officer identified her, saying that she offered to have sex with him for $240. The defendant was in possession of the $240 prerecorded buy money. The Vice Unit collected and vouchered other evidence from the apartment, including a red notebook that contained people’s names and addresses, amounts of money, a cordless phone and battery, and a telephone caller identification apparatus. The name of the undercover police officer was, in fact, in the red notebook.
The defendant and the male who opened the door to the apartment were placed under arrest.
Conclusions of Law
Probable cause existed for the entry into the apartment. In People v Gonzalez (232 AD2d 273 [1st Dept 1996]), the appellate court reversed the order of the hearing court that granted, upon renewal, the motion to suppress. In Gonzalez, a prosecution for possession of a controlled substance and gambling devices, the appellate court held that the emergency doctrine was applicable. The Court stated: “The failure of the undercover to emerge from the social club after 10 minutes beyond the usual 20 minute period he was allotted to investigate a premises created a reasonable basis for the team to believe that an emergency existed and that there was an immediate need for their *599 assistance to protect his life.” {Id., at 274.) Gonzalez is applicable to the facts of the present case, and the fact that the predetermined time was only a 10-minute wait before Officer Golston and the other five members of the police team entered to help the undercover officer — instead of the 20 minutes in Gonzalez — was inconsequential and, indeed, reasonable under the circumstances, especially in light of the type of prostitution activity being investigated.
The confirmatory identification by the undercover police officer of the defendant, at the scene, to the arresting officer was proper and provided the probable cause to arrest. (People v Young, 277 AD2d 176 [1st Dept 2000]; People v Sparkman, 278 AD2d 875 [4th Dept 2000]; People v Rosario, 275 AD2d 224 [1st Dept], lv denied 95 NY2d 938 [2000]; People v Roman, 273 AD2d 53 [1st Dept], lv denied 95 NY2d 938 [2000]; People v Rodriguez, 271 AD2d 350 [1st Dept], lv denied 95 NY2d 857 [2000]; People v Jenkins, 271 AD2d 548 [2d Dept], lv denied 95 NY2d 867 [2000]; People v Johnson, 269 AD2d 406 [2d Dept 2000], lv denied 94 NY2d 949 [2000].)
Accordingly, the defendant’s motion to suppress is, in all respects, denied.